FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2009 APR -2 P 3:59

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

JEFFREY TOBER, an individual; )
SARA OXANA KORSUNOVA SKEAT, )
an individual; and IXIS, a corporation, )
)
Plaintiffs, )
) CIVIL ACTION NO.: 1:09 cv 346
v. )
) CMH/JFA
APROV.COM, an Internet domain name, )
)
Defendant. )
_____)
)
Attorneys for Plaintiffs: )
)
Gilbert K. Davis   VA Bar No. 4683 )
Davis and Associates, LLC )
9502-A Lee Highway )
Fairfax, VA 22031 )
703-352-3850 )
)
Enrico Schaefer   MI Bar No. P43506 )
Traverse Legal, PLC )
810 Cottageview Drive, Unit G-20 )
Traverse City, MI 49686 )
231-932-0411 )
_____)

THIS COMPLAINT IS RELATED TO A PREVIOUS ACTION FILED IN THIS HONORABLE COURT UNDER CASE NUMBER 1:07-cv-01252-LMB-TCB, WHICH WAS DISMISSED WITHOUT PREJUDICE.

**COMPLAINT**

Jeffrey Tober, Sara Oxana Korsunova Skeat, and IXIS ("Plaintiffs") allege as follows:

**NATURE OF THE ACTION AND RELIEF SOUGHT**

1. Plaintiffs file this *in rem* action under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), against the *res*, APROV.COM (the "Domain Name").

2. The Domain Name contains Plaintiffs' distinct and famous trademark APROV in its entirety.

3. Upon information and belief, the unlawful registrant of the Domain Name resides in London, England, and is not authorized to use the APROV mark in the Domain Name. This belief is based upon various email correspondence between Plaintiffs and unlawful registrant, the fact that other London based escort agencies have been attacked in similar fashion and respondent's general familiarity with London based government agencies. Moreover, despite Plaintiffs' due diligence, the true identity of the unlawful registrant has not been identified.

4. The ACPA, 15 U.S.C. § 1125(d)(1)(A), which was enacted on November 29, 1999, makes unlawful the bad faith registration, trafficking in or use of a domain name that:

   a. In the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;
   b. In the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark.

15 U.S.C. § 1125(d)(1)(A)(i)(III).

5. The APROV mark, through continuous and extensive use by the Plaintiffs since 2002, is distinctive and famous, and the Domain Name is identical and confusingly similar to or dilutive of the APROV mark.

6. Upon information and belief, the unlawful registrant gained access to Plaintiffs email account and domain name account manager and changed login information and passwords.

7. Upon information and belief, the unlawful registrant has provided false identity information to the registrar of the Domain Name in order to maintain control of the Domain Name.

8. The unlawful registrant is using the Domain Name for a linkspam site. See Exhibit A, printout of <aprov.com>.

9. As owners of the APROV mark contained in the Domain Name, Plaintiffs seek the transfer of the Domain Name as provided for in the ACPA. 15 U.S.C. § 1125(d)(2)(D)(i).

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1125(d), and 28 U.S.C. §§ 1331, 1338(a).

11. The ACPA, 15 U.S.C. § 1125(d)(2)(A)(i)(I) provides that an *in rem* action against a domain name is proper if the court finds that the owners of trademarks protected by the ACPA are unable to obtain *in personam* jurisdiction over a person who would have been a defendant under Paragraph (1) of the ACPA. 15 U.S.C. §1125(d)(1). Paragraph (1) provides for filing a civil action against a person that registers, traffics in or uses a domain name where there exists a bad faith intent to profit from the goodwill of a trademark that is either identical, confusingly similar to, or dilutive of a mark.

12. The legislative history of the ACPA indicates that the inability to obtain *in personam* jurisdiction "occurs when a non-U.S. resident cybersquats on a domain name that infringes a U.S. trademark." H.R. Rep. 106-412 at 9 (1999).

13. *In rem* jurisdiction is proper under 15 U.S.C. § 1125(d)(2). In particular, Plaintiffs are not able to identify the unlawful registrant who would have been a defendant in an *in personam* action under Paragraph (1) of the ACPA. 15 U.S.C. § 1125(d)(1).

14. In particular, Plaintiffs have sent a notice of the violation and intent to proceed under 15 U.S.C. § 1125(d)(2) to the registrant at the postal and email address provided by the registrant to

3

the registrar. See Exhibit B, October 18, 2007 notice letter and email, with confirmation of receipt.

15. The unlawful registrant of the Domain Name has only altered the email address for the registrant information of the Domain Name, namely from business@ixis.ws to galexwilkes@googlemail.com. See Exhibit C, printout of Domain History for <aprov.com> as of May 6, 2007; see also Exhibit D, printout of Domain History for <aprov.com> as of October 3, 2007. The other registrant information, namely the postal address, remains that of the Plaintiffs. Regardless, Plaintiffs sent the October 18, 2007 notice to the postal address listed with the registrar, even though this was the Plaintiffs themselves and received as such. More importantly, the email was sent to galexwilkes@googlemail.com, an email that unlawful registrant has both received and sent email from to Plaintiffs establishing receipt. Based upon the communications from the unlawful registrant of the Domain Name, namely threats and efforts to extort Plaintiffs, it is also clear that the unlawful registrant received the notice. See Exhibit E, emails from unlawful registrant. Consequently, an *in rem* action is proper.

16. The registrant has received actual notice of this action by receipt at a known working email address, galexwilkes@googlemail.com, and evidence of actual notice is sufficient to satisfy the publication requirement under 15 U.S.C. § 1125(d)(2)(B).

17. The ACPA provides that, in an *in rem* action, a domain name shall be deemed to have its situs in (a) the judicial district in which the domain name registry is located, or (b) where documents sufficient to establish control and authority regarding the disposition of the registration and use of the domain names are deposited with the court. 15 U.S.C. § 1125(d)(2)(C).

18. This court has jurisdiction over the *res*, the Domain Name, APROV.COM, that is the subject of this Complaint, because the registry, VeriSign, Inc., which maintains the centralized database for domain names, including APROV.COM, has its principal place of business in Herndon, Virginia, which is located in this District. VeriSign, Inc., maintains the shared reservation system that allows all registrars to enter new domain names into the master directory and to submit modifications, transfers, re-registrations, and deletions of existing domain names.

19. The ACPA provides that in an *in rem* action, upon receipt of written notification of a filed, stamped copy of a complaint filed in a United States district court by the owner of a mark, the domain name registry shall:

   a. Expeditiously deposit with the court documents sufficient to establish the court's control and authority regarding the disposition of the registration and use of the domain name to the court; and
   b. Not transfer, suspend, or otherwise modify the domain name during the pendency of the action, except upon order of the court.

15 U.S.C. § 1125(d)(2)(D).

20. Upon Plaintiffs' notification of this Complaint to the registrar, Tucows, Inc., located at 96 Mowat Avenue, Toronto, ON, Canada M6K 3M1, with which the Domain Name was registered, Tucows will deposit the registrar certificate that will provide this Court with control over the Domain Name.

21. Venue is proper in this District because Network Solutions, and VeriSign, the registry, is located in this District and, under 28 U.S.C. § 1391(b), a substantial part of the events giving rise to the claims occurred in this District.

## THE PLAINTIFFS

22. Jeffrey Tober and Sara Oxana Korsunova Skeat are individuals who have resided at Falcon Cottage, Village Road, Denham, UB9 5BE, England since August 2000, though the

property has been in the family of Plaintiff Skeat since the mid-1960's. See Exhibits F and G, Driving License for both Tober and Skeat, respectively.

23. Plaintiffs Tober and Skeat are married. See Exhibit H, Marriage Certificate.

24. Plaintiff Skeat founded IXIS Language Services ("IXIS") as a sole proprietor on October 10, 2001. See Exhibit I, Letter from Mike Wibrew, Barclays Bank. IXIS provides translation services for Russian and English languages. In fact, Plaintiff Skeat performs the translation. See Exhibit J, IXIS Invoice examples.

25. In or about 2000, Plaintiffs Tober and Skeat, while mainly doing business out of their home at Falcon Cottage, chose to purchase a separate mailbox for IXIS. Plaintiff IXIS has the following mailing address: Suite 15, 2 Old Brompton Road, South Kensington, SW7 3DQ, London, United Kingdom. See Exhibit K, Citibox mailbox rental confirmation. As will be shown below, this is the same address that was initially provided by the Plaintiffs in the registrant information for the Domain Name.

26. Plaintiffs Tober, Skeat, and IXIS continue to use and have sole access to the Old Brompton Road mailbox, as evidenced by Plaintiff Tober's possessing the recent mailings, including Packages from the National Arbitration forum, a letter addressed to Sara Skeat, a letter addressed to J. Tober, a letter addressed to Oxana Korsunova, and a letter addressed to G. Alex Wilkes. See Exhibit L, scanned copies of mail.

27. Both Plaintiffs Tober and Skeat are trading as IXIS. Both Plaintiff Skeat and Plaintiff Tober maintain accounts that exhibit each is trading as IXIS. See Exhibit M, Plaintiff Skeat's Barclays Business Current Account Statement; see also Exhibit N, Plaintiff Tober's American Express Merchant Statement (surname is spelled incorrectly). Moreover, Plaintiff Skeat has a

checking account and credit card for IXIS. See Exhibit O, Skeat T/AS IXIS voided check; see also Exhibit P, Korsunova credit card.

28. Plaintiff Tober even has a telephone that he uses, in part, for purposes of IXIS. See Exhibit Q, Vodafone Invoice. Plaintiff Tober also purchases items for IXIS. See Exhibit R, Addressograph Sales Invoice.

29. Plaintiff IXIS maintains a business account with Barclays. See Exhibit S, Barclays Account Statement, dated August 31, 2007. The maintenance of a bank account is all that is required to allow an individual to trade as a business in England since there is no separate legal identity created by a sole proprietorship. An individual need not register a trade, or business, with Companies House. See Exhibit S1, Letter from Barton Facey, Tax Specialist; see also Exhibit S2, Email from Companies House.

30. Plaintiffs Tober and Skeat initially had their IXIS business account and the Barclaycard Merchant Services Account, utilize their home address at Falcon Cottage. See Exhibit T, Welcome Letter from Barclaycard Business; See Exhibit U, Welcome Card from Barclaycard Merchant Services.

31. Plaintiffs Tober and Skeat maintained their residence at Falcon Cottage, and as such, continued to list that address on IXIS business accounts. See Exhibit V, Barclays Account Statement, dated August 31, 2007.

## USE OF THE APROV MARK IN THE DOMAIN NAME

### A. Other Domains

    a. &lt;agency-provocateur.com&gt;

32. Plaintiffs Tober and Skeat jointly created Agency Provocateur, an introduction / escort agency in 2001.

7

33. Plaintiff Tober purchased the domain name <agency-provocateur.com> in his own name on or about May 21, 2001. See Exhibit W, WHOIS Results for <agency-provocateur.com> as of June 10, 2001. The website at this domain name related to the lawful and bona fide offering of introduction/escort services in the London, Great Britain area.

34. On or about June 16, 2001, Plaintiff Tober completed the Network Solutions Registrant Name Change Agreement for <agency-provocateur.com>. See Exhibit X, Registrant Name Change Agreement.

35. Ultimately, Plaintiff Tober received a Registrant Name Change Agreement Confirmation from the registrar, Network Solutions, to change the registrant information for <agency-provocateur.com> from "Tober,J" to his dba/alias "Wilkes, G. Alex." See Exhibit Y, Registrant Name Change Agreement Confirmation.

36. Thereafter, Plaintiff Tober requested a registrar change. On December 23, 2002, Plaintiff Tober received confirmation for his requested domain name registrar change for <agency-prevocateur.com>. See Exhibit Z, Domain Name Registrar Change.

    **b.** **<agency-provocateur.co.uk>**

37. Plaintiff Tober purchased the domain name <agency-provocateur.co.uk> under his own name on or about May 23, 2001.

38. Thereafter, Plaintiff Tober requested that <agency-provocateur.co.uk> be transferred to G. Alex Wilkes, the name under which he conducts business related to Agency Provocateur in order to maintain his personal privacy. On June 14, 2001, Plaintiff Tober received a Transfer of Registration Form from Nominet.uk, the registrar. See Exhibit AA, Transfer of Registration Form for <agency-provocateur.co.uk>. Plaintiff Tober adhered to the requirements set forth in

the Form by drafting, on his own letterhead, a note confirming that <agency-provocateur.co.uk> is to be transferred to G. Alex Wilkes. See Exhibit BB, Handwritten Confirmation of Transfer.

39. Plaintiff Tober was mailed the Registration Reply Form Confirmation of Registration sent by Nominet.uk to G. Alex Wilkes. On behalf of G. Alex Wilkes, Plaintiff Tober completed and returned the Form. See Exhibit CC, Registration Reply Form Confirmation of Registration for <agency-provocateur.co.uk>.

40. Ultimately, Plaintiff Tober received the confirmation of Registration for <agency-provocateur.co.uk>, which now had his business name, G. Alex Wilkes, listed as the registrant, per Plaintiff Tober's request. See Exhibit DD, Registration Certificate for <agency-provocateur.co.uk>.

c. <aprov.com>

41. Plaintiff IXIS, through Plaintiff Tober, registered the Domain Name which is the subject of this In Rem proceeding, APROV.COM, on or about April 3, 2002 with the registrar Tucows, Inc.

42. Plaintiff IXIS was listed as the registrant. In order to maintain his personal privacy, Plaintiff Tober used the name G. Alex Wilkes, his nom de guerre, as the administrative and technical contact. Plaintiff Tober also listed the Citibox mailing address at Old Brompton Road, which was purchased for use by IXIS, as the postal address. Furthermore, Plaintiff Tober used the email address business@ixis.ws. See WHOIS History from August 1, 2003 for <aprov.com>.

43. Despite operating under the name G. Alex Wilkes, Plaintiff Tober personally handled much of the business related to Agency Provocateur and the Domain Name, including setting up

email accounts for the Domain Name. See Exhibit EE, email request made by Plaintiff Tober as G. Alex Wilkes requesting email information pertaining to IXIS and Agency Provocoteur.

44. The Domain Name's website provided identical content as that offered at <agency-provocateur.com>.

45. Plaintiff Tober renewed the Domain Name in or about 2003, at which time Plaintiff Tober paid $48.00 in his wife, Plaintiff Skeat's name. See Exhibit FF, Low Cost Domains.com Domain Name Registration. All of the registrant information remained the same.

46. Plaintiff Tober again renewed the Domain Name on March 13, 2007, while maintaining the same registrant information.

47. On September 29, 2007, the website at the Domain Name went offline, and it could not be accessed by Internet users. See Exhibit GG, Affidavit of Tober.

48. On September 30, 2007, Plaintiff Tober learned that the name servers for the IXIS website, www.ixis.ws, had been changed without Plaintiffs' authorization. See Exhibit GG, Affidavit of Tober.

49. On October 2, 2007, Plaintiff Tober regained access to the email account that was listed as the contact for the Domain Name, business@ixis.ws. Plaintiff Tober learned that a domain name transfer request had been made for the Domain Name, and he immediately used the authorization code provided by the registrar, Tucows, Inc., to decline the transfer. See Exhibit GG, Affidavit of Tober.

50. On October 3, 2007, Plaintiff Tober changed the login information for the Domain Name manager account, but he failed to change his password for the business@ixis.ws email account. See Exhibit GG, Affidavit of Tober.

51. Upon information and belief, the unlawful registrant had unlawfully gained access to Plaintiff Tober's email account through hacking or other electronic means, was able to view the changed login information for the Domain Name manager account, and was able to login to the Domain Name manager account.

52. Thereafter, upon information and belief, the unlawful registrant was able to change the Domain Name manager account password so as to prevent Plaintiffs from accessing it.

53. Finally, the unlawful registrant, now with control over the Domain Name manager account, changed the registrant contact email address from business@ixis.ws to galexwilkes@googlemail.com, and now receives all communications relating to the Domain Name.

54. Plaintiff Tober, as well as Plaintiffs Skeat and IXIS, can no longer access the Domain Name manager account. See Exhibit GG, Affidavit of Tober; see also Exhibit HH, Affidavit of Skeat.

55. Plaintiff Tober, as well as Plaintiffs Skeat and IXIS, no longer receive communications regarding the Domain Name at the business@ixis.ws email. See Exhibit GG, Affidavit of Tober; see also Exhibit HH, Affidavit of Skeat.

56. Ultimately, Plaintiffs have lost control over the Domain Name as well as the content, or website, stored at the Domain Name. See Exhibit GG, Affidavit of Tober; see also Exhibit HH, Affidavit of Skeat.

57. Upon information and belief, Plaintiffs have been hacked.

58. The Domain Name no longer resolves to Plaintiffs' website, but instead to a linkspam website. See Exhibit A, printout of <aprov.com> website.

59. A linkspam website derives revenue from the website as a result of traffic established under the APROV common-law trademark brand created by Plaintiffs.

60. The unlawful registrant has obtained registration control with a bad faith intent to leverage Plaintiffs' goodwill, trademark rights, and internet traffic for his/her own profit.

61. The association of the APROV mark and the Domain Name with a linkspam site has caused consumer confusion. See Exhibit GG, Affidavit of Tober.

## PLAINTIFFS' RIGHTS IN THE APROV MARK

62. Plaintiffs have common law trademark rights in APROV after substantial use since at least as early as 2002.

63. Plaintiffs' common law rights have accrued through the continuous and extensive use of the APROV mark by Plaintiffs on the Internet and in connection with its services for over 5 years. See Exhibit GG, Affidavit of Tober; see also Exhibit HH, Affidavit of Skeat.

64. Upon information and belief, Plaintiffs were the first to ever use the APROV mark.

65. Upon information and belief, there are no other entities using "aprov" as a trademark or service mark.

66. In fact, Plaintiff Skeat filed a trademark application for APROV with The Patent Office on or about October 14, 2006. However, due to Plaintiff Skeat's failure to respond to a particular requirement, the application was abandoned. See Exhibit II, December 14, 2006 Notice of Abandonment of APROV Trademark Application. Note that the address provided listed is the same as the address provided for the registrant contact information for the <agency-provocateur.com> domain. Moreover, Plaintiff Skeat's receipt of this information shows she does indeed receive mail at the Old Brompton Road address.

67. The APROV mark is inherently distinctive and/or has acquired distinctiveness dating back to its first use in or about 2002, long prior to 2007 when Plaintiffs lost control of the Domain Name.

68. APROV has no particular meaning and was created as an abbreviation for a longer domain <Agency-PROVocateur.com>, which was more difficult to remember, type, and spell. See Exhibit GG, Affidavit of Tober.

69. Through its advertising and marketing efforts, Plaintiffs have caused the APROV mark to become famous in the relevant market of London as well as the United States. In fact, APROV is the first result of a Google search for "aprov." See Exhibit JJ, printout of Google Results. Moreover, Plaintiffs' business, as represented by the APROV mark, is cited in the London Escort Guide. See Exhibit KK, Screenshots of londonescortguide.com. It is also listed on the escort agency review website Captain 69. See Exhibits LL and MM, Screenshot of captain69.co.uk and Captain 69 Agency Review, respectively.

70. Plaintiffs' APROV mark has been used in interstate commerce in the United States. Plaintiffs have provided information and services to consumers in the United States since as early as 2002. Plaintiffs directly market their services to consumers in United States commerce through the use of email contact lists. The provision of information and the advertisement of services through a website qualifies as use in commerce under the Lanham Act.

71. Plaintiffs deliberately promote and advertise their services over the Internet to consumers located in the United States. Prior to the hijacking of <aprov.com>, Plaintiffs received revenues of approximately £9,000 – £13,500 per month, or about $13,200 - $19,700 United States Dollars, from clients originating from the United States. These clients comprised approximately 30% of

13

Plaintiffs' client base. Since the hijacking of <aprov.com>, Plaintiffs' United States clients have declined to 10% of its overall client base. See Exhibit GG, Affidavit of Tober.

72. Plaintiffs also advertise their services in commerce in the United States through print media. These print advertisements have been published in Maxim magazine and the International Herald Tribune, the global edition of the New York Times. Maxim magazine is delivered to subscribers in every state, and The International Herald Tribune is delivered to addresses in New York City, New Jersey, Boston, Connecticut, Cambridge, Buffalo, Westchester, Philadelphia, and Washington D.C. See Exhibit GG, Affidavit of Tober. See Exhibit NN, Printout of International Herald Tribune delivery options. See also Exhibit OO, Delivery Statistics for Maxim Magazine.

73. The United States consuming public recognizes the APROV mark as an indicator of the high-level of services provided by Plaintiffs.

74. Plaintiffs used to receive 40-50 inquiries per day for their services. See Exhibit GG, Affidavit of Tober. Since the unlawful registrant has taken over control, Plaintiffs now receive 5-15 inquires per day, which has affected their ability to lead a successful business. See Exhibit GG, Affidavit of Tober.

## COUNT I

## VIOLATION OF THE ANTICYBERSQUATTING CONSUMER PROTECTION ACT

75. Plaintiffs restate and incorporate all prior and subsequent paragraphs of this Complaint.

76. Upon information and belief, the APROV mark was distinctive and famous in the relevant market at the time control of the Domain Name was taken from Plaintiffs.

77. Upon information and belief, the Domain Name was used by the unlawful registrant long after the Plaintiffs adopted the APROV mark and long after the APROV mark became distinctive and famous in the relevant market.

78. The Domain Name is identical to, confusingly similar to, or dilutive of the APROV mark.

79. The Domain Name contains the Plaintiffs common law trademark, APROV.

80. The unlawful registrant had, and continues to have, a bad faith intent in the registration, trafficking in or use of the Domain Name containing the Plaintiffs' APROV mark.

81. The unlawful registrant's acts have infringed upon or diluted the Plaintiffs' APROV mark in violation of the ACPA.

82. The registration, trafficking in or use of the Domain Name by the unlawful registrant shows a bad faith intent to profit from the goodwill of Plaintiffs' APROV mark and, as such, constitutes acts of cyberpiracy in violation of the ACPA.

83. Despite Plaintiffs due diligence and adherence to the notice provisions of the ACPA, this Court lacks personal jurisdiction over him/her and an *in rem* action is the proper civil action.

WHEREFORE, Plaintiffs pray for judgment and relief as follows:

   a. That the Domain Name, APROV.COM, set forth in the Complaint be transferred to Plaintiffs; and

   b. For such other and further relief as this Court may deem just and proper.

Respectfully submitted,

DAVIS AND ASSOCIATES, LLC
TRAVERSE LEGAL, PLC
Attorneys for Plaintiffs

By: Gilbert K. Davis
Virginia Bar No. 4683

Counsel for Plaintiff
Davis and Associates, LLC
9502-A Lee Highway
Fairfax, Virginia 22031
Tel: 703-352-3850
Fax: 703-352-9320
gildavis@verizon.net