IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JEFFREY TOBER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Civil Action No. 1:09cv0346 (CMH/JFA) |
| | ) |
| <APROV.COM>, an Internet domain name, | ) |
| | ) |
| Defendant. | ) |

## PROPOSED FINDINGS OF FACT AND RECOMMENDATIONS

This matter is before the court on plaintiffs' motion for default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). (Docket no. 14). Plaintiffs are individuals Jeffrey Tober and Sara Oxana Korsunova Skeat and IXIS Language Services ("plaintiffs"). In this *in rem* action involving the domain name <aprov.com>, the plaintiffs seek a default judgment ordering that <aprov.com> be transferred to them. Pursuant to 28 U.S.C. § 636(b)(1)(C), the undersigned magistrate judge is filing with the court his proposed findings of fact and recommendations, a copy of which will be provided to all interested parties. The District Judge will review these proposed findings and recommendations *de novo* following the filing of objections within fourteen days.

### Procedural Background

The procedural background of this action has been thoroughly discussed in two prior proposed findings of fact and recommendations filed by the undersigned (Docket nos. 5, 9) and will not be recited here in great detail. Plaintiffs' first complaint seeking transfer of the <aprov.com> domain name, filed on December 13, 2007, was dismissed without prejudice on September 23, 2008. (Civil Action no. 1:07cv1252 (LMB/TCB), Docket no. 15). On April 2,

2009, plaintiffs filed their second complaint alleging a violation of the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) ("ACPA") and seeking an Order directing transfer of the domain name under 15 U.S.C. § 1125(d)(2). (Docket no. 1).[1] On April 8, 2009 plaintiffs filed a motion for an order to transfer domain name (Docket no. 2) and a waiver of oral argument on April 21, 2009 (Docket no. 4). On May 13, 2009, the undersigned magistrate judge filed his first proposed findings of fact and recommendations and provided a copy to all parties. (Docket no. 5). On May 22, 2009, plaintiffs filed their objection to the proposed findings of fact and recommendations (Docket no. 6) and on June 8, 2009, plaintiffs filed a supplemental affidavit of service (Docket no. 7). On July 20, 2009, the District Judge entered an Order referring this matter back to the undersigned for the consideration of the new evidence contained in the supplemental affidavit of service. (Docket no. 8). On August 4, 2009, the undersigned filed his amended proposed findings of fact and recommendations and provided a copy to all parties. (Docket no. 9). In the amended proposed findings of fact and recommendations, the undersigned recommended that the motion for an order to transfer domain name be denied and that the plaintiffs be ordered to publish notice of this proceeding. *Id.* On October 16, 2009, the District Judge entered an Order adopting the findings of the undersigned, denying the plaintiffs' motion to transfer domain name, and ordering the plaintiffs to publish notice of this proceeding

---

[1] The complaint contains two exhibits that are described as affidavits. (Docket no. 1, Exs. GG and HH). Despite this description and the fact that they appear to be notarized by a "Solicitor Authorized To Administer Oaths," these affidavits do not contain any language by the "affiant" that the "affidavits" were given under oath or penalty of perjury. For the purposes of this motion, the undersigned is assuming that these affidavits have been sworn to under oath. In addition, Exhibit GG to the complaint, the purported affidavit of Jeffrey Tober, is unsigned. (Docket no. 1, Ex. GG). At the hearing on February 5, 2010, plaintiffs' counsel was instructed to submit a signed copy of this affidavit. On February 26, 2010, plaintiffs' counsel filed a signed copy of the Tober affidavit but this version was not executed before a Solicitor authorized to administer oaths and there is no indication that it was signed under the penalty of perjury. (Docket no. 19).

2

in the manner provided in the Order of Publication attached to the amended proposed findings of fact and recommendations. (Docket no. 10). On November 9, 2009, plaintiffs filed an affidavit of publication indicating that the notice of proceeding had been published in *The Washington Times* on October 26, 2009 in compliance with the Order of Publication.[2] (Docket no. 11). On November 20, 2009, the plaintiffs filed their request for an entry of default against the defendant domain name (Docket no. 12) and the Clerk entered a default on November 23, 2009 (Docket no. 13). On November 25, 2009, plaintiffs filed a motion for default judgment with a memorandum in support. (Docket no. 14). On December 1, 2009, plaintiffs filed a waiver of oral argument on their motion for default judgment. (Docket no. 15). On January 13, 2010, the undersigned entered an Order informing the plaintiffs that a hearing would be held on plaintiffs' motion for default judgment on February 5, 2010 at 10:00 a.m. and a copy of the Order was mailed to the listed registrant of <aprov.com>. (Docket no. 16). On February 5, 2010, counsel for the plaintiffs appeared at the hearing on the motion for default judgment and no claimant appeared on behalf of the defendant domain name. On February 26, 2010, plaintiffs filed an affidavit of Enrico Schaeffer with, *inter alia*, a signed affidavit of plaintiff Tober that is substantially similar to the unsigned affidavit of Tober filed with the complaint. (Docket no. 18). On February 26, 2010, a signed copy of the Tober affidavit submitted as Exhibit GG to the complaint was filed with the court. (Docket no. 19).

## **Factual Background**

The following facts are established by the complaint (Docket no. 1), the motion for default judgment (Docket no. 14), and the affidavits filed with the court on February 26, 2010

---

[2] The motion for default judgment mistakenly avers that the Order of Publication was published in *The Washington Post*. In fact, as attested to by plaintiffs' counsel in an affidavit filed with the court on February 26, 2010, the Order of Publication was published in *The Washington Times*. (Docket no. 18 ¶ 7).

3

(Docket nos. 18, 19). Plaintiffs Jeffery Tober and Sara Oxana Korsunova Skeat are married residents of Denham, England. (Compl. ¶¶ 22, 23). Plaintiff Skeat is the founder of the sole proprietorship IXIS Language Services ("IXIS"), which was founded on October 10, 2001. (Compl. ¶ 24). Both Tober and Skeat trade as IXIS and maintain accounts that exhibit that each is trading as IXIS. (Compl. ¶ 27). Tober and Skeat jointly created Agency Provocateur, an introduction and escort agency, in 2001. (Compl. ¶ 32). Plaintiffs registered several domain names for use in association with Agency Provocateur, including <agency-provocateur.com> and <agency-provocateur.co.uk>. (Compl. ¶¶ 33, 37).

Plaintiff IXIS, through plaintiff Tober, registered the <aprov.com> domain name, the subject of this *in rem* proceeding, on or about April 3, 2002. (Compl. ¶ 41). <Aprov.com> was chosen as an abbreviation of the longer <agency-provocateur.com> domain name. (Docket no. 19, Ex. 1 ¶ 11). Tucows, Inc. is the registrar for the <aprov.com> domain name. (Compl. ¶ 20). At some point plaintiff IXIS was listed as the registrant of <aprov.com>, and Tober used a pseudonym, "G. Alex Wilkes" as the administrative and technical contact for <aprov.com> to protect his privacy. (Compl. ¶ 42). The <aprov.com> domain name was renewed by plaintiffs on two occasions. (Compl. ¶¶ 45, 46). Plaintiffs allege that the "APROV" mark has been in continuous and extensive use since 2002. (Compl. ¶ 5). The plaintiffs claim they have made continuous and extensive use of the "APROV" mark on the Internet and in connection with their services for over five years. (Compl. ¶ 63). Plaintiffs state they were the first to ever use the "APROV" mark (Compl. ¶ 64) and that there are no other entities using "APROV" as a service mark or trademark (Compl. ¶ 65). Although the request was ultimately abandoned, Skeat filed a trademark application for the APROV mark with the United States Patent Office on or about October 14, 2006. (Compl. ¶ 66).

4

Plaintiffs allege they have engaged in advertising and marketing efforts featuring the "APROV" mark and that they have used the "APROV" mark in commerce in London, England and the United States. (Compl. ¶ 69). Plaintiffs' Agency-Provocateur business, as represented by the "APROV" mark is cited in the London Escort Guide. (Compl. ¶ 69). In addition, Agency-Provocateur is listed on the escort agency review website Captain 69. (Compl. ¶ 69). Plaintiffs claim the "APROV" mark has been used in interstate commerce in the United States since as early as 2002 when they began providing information and services to consumers in the United States. (Compl. ¶ 70). Plaintiffs state they directly market their services to consumers in United States commerce through the use of email contact lists (Compl. ¶ 70) and promote and advertise their services to consumers located in the United States through the use of the Internet. (Compl. ¶ 71). At one time, United States clients comprised approximately 30% of plaintiffs' clientele. (Compl. ¶ 71). Plaintiffs also advertise their services in commerce in the United States through print advertisements that have been published in Maxim magazine and the International Herald Tribune, the global edition of the New York Times. (Compl. ¶ 72).

On September 29, 2007 the website that was formerly hosted by the plaintiffs at <aprov.com> went offline. (Compl. ¶ 47). Tober soon realized that the name servers for the IXIS website, www.ixis.ws, had been changed without his authorization, and that a domain name transfer request had been issued for the <aprov.com> domain name. (Compl. ¶¶ 48, 49). Tober then used the authorization code provided by the registrar to decline the transfer. (Compl. ¶ 49). He soon changed the login information for the domain name's manager account, but he failed to change his password for his business@ixis.ws email account. (Compl. ¶ 50). Another person (the "current registrant") then gained unauthorized access to Tober's email account, changed Tober's password, and ultimately locked Tober out of the account. (Compl. ¶¶ 51, 52).

Plaintiffs are now unable to access the domain name's manager account or receive communications regarding the domain name. (Compl. ¶¶ 54, 55). The domain name resolved to a linkspam website at least from the time of October 11, 2007 through October 27, 2007. (Docket no. 18 ¶ 8). There is no website currently available at the aprov.com domain name. (Docket no. 18 ¶ 8). Prior to their losing the ability to access <aprov.com>, plaintiffs received revenues of approximately £9,000 - £13,500, or about $13,200 - $19,700, per month from clients originating from the United States. (Compl. ¶ 71).

In conjunction with the first lawsuit, plaintiffs sent a notice of violation and intent to proceed under 15 U.S.C. § 1125(d)(2) to the current registrant at the postal and email address provided by the current registrant to the registrar on October 18, 2007. (Compl. ¶ 14). As directed by the court in conjunction with this second lawsuit, on May 14, 2009, Cathy A. Maddasion, a legal assistant employed by plaintiffs' counsel sent a copy of the complaint and exhibits to the current registrant at the email address galexwilkes@googlemail.com. (Docket no. 7, Ex. 1). On May 27, 2009, Ms. Maddasion received a notification from a service identified as ReadNotify.com that the complaint she sent to the current registrant's email address had been opened by someone. (Docket no. 7, Ex. 1). Pursuant to the court's October 16, 2009 Order, notice of this action was published in *The Washington Times* on October 26, 2009. (Docket no. 11). Despite diligence on the part of plaintiffs to notify the current registrant of this action by email and through publication in *The Washington Times*, no person has appeared or filed any pleading or made any claim to the defendant domain name in this case in response to plaintiffs' complaint.

## Proposed Findings and Recommendations

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of a default judgment when "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Based on the failure of anyone to file a responsive pleading or claim to the defendant domain name in a timely manner, the Clerk has entered a default. (Docket no. 13). A defendant in default admits the factual allegations in the complaint. *See* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."); *see also GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."). Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that a court may conduct a hearing to determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter.

## Jurisdiction and Venue

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. Plaintiffs' claims arise under the ACPA, 15 U.S.C. § 1125(d), and this court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a).

The court has *in rem* jurisdiction over the domain name <aprov.com> pursuant to Section 43(d)(2)(A) of the Lanham Act, 15 U.S.C. § 1125(d)(2)(A), as plaintiffs have been unable to obtain *in personam* jurisdiction over the current registrant or to find a person who would have been a defendant in a civil action under ACPA, despite due diligence. (Compl. ¶¶ 11-17). The first required element for *in rem* jurisdiction over a domain name is satisfied when the domain

7

name violates any right of the owner of a mark registered with the Patent and Trademark Office, or protected under subsection (a) or (c). *See* 15 U.S.C. § 1125(d)(2)(A)(i). In turn, 15 U.S.C. § 1125(a)(1) makes liable:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

The "APROV" mark is not registered with the Patent and Trademark Office. However, as it has been used by the current registrant, the requirements of 15 U.S.C. § 1125(a)(1) have been satisfied. The defendant domain name has been used to resolve to a linkspam website that offers the goods and services of others under the "APROV" mark. Thus, the current registrant has used the "APROV" mark, through the defendant domain name, in connection with a service in commerce that is likely to cause confusion or deceive the public as to the actual sponsor of that service. As such, the "APROV" mark is protected under 15 U.S.C. § 1125(a) and the first part of the test for *in rem* jurisdiction contained in 15 U.S.C. 1125(d)(2)(A)(i) is satisfied.

The ACPA also conditions *in rem* jurisdiction upon a finding that the trademark owner: (a) is unable to obtain personal jurisdiction over a person who would otherwise be a defendant in a civil action under the ACPA; or (b) through due diligence cannot find the person who would have been a defendant in such an action, having sent that person postal and electronic notice of both the alleged violation and the owner's intent to sue. *See* 15 U.S.C. § 1125(d)(2)(A)(ii).

Plaintiffs are unable to obtain personal jurisdiction over the current registrant, who otherwise would be the named defendant in this action, as it appears that the actual identity of the current registrant is unknown.

Venue is proper in this district under 15 U.S.C. § 1125(d)(2)(C)(i), which places venue for an *in rem* ACPA action in the judicial district in which the domain name's registrar, registry, or other domain name authority that registered or assigned the domain name is located. VeriSign, Inc., which has offices in Dulles, Virginia, within this district and division, is the exclusive registry controlling all domain names in the generic .com top-level domain, including <aprov.com>.

For these reasons, the undersigned magistrate judge recommends a finding that this court has subject matter jurisdiction over this action, that the court has *in rem* jurisdiction over the defendant domain name and that venue is proper in this court.

### Service

On October 18, 2007, plaintiffs sent a notice of violation and intent to proceed under 15 U.S.C. § 1125(d)(2) to the current registrant at the postal and email address provided by the current registrant to the registrar. (Compl ¶ 14). On May 14, 2009, Cathy A. Maddasion, a legal assistant employed by plaintiffs' counsel sent a copy of the complaint and exhibits filed in this action to the current registrant at the email address galexwilkes@googlemail.com. (Docket no. 7, Ex. 1). On May 27, 2009, Ms. Maddasion received a notification from a service identified as ReadNotify.com that the complaint she sent to the current registrant's email address had been opened by someone. (Docket no. 7, Ex. 1). In addition, pursuant to the court's October 16, 2009 Order (Docket no. 10), plaintiffs published notice of this action in *The Washington Times* on October 26, 2009. (Docket No. 11, Ex. A). As set forth in the published notice, any person

claiming an interest in the defendant domain name was required to file an answer or other response to the complaint within twenty (20) days from the date of the publication of the Order in *The Washington Times*. The twenty-day time period for filing an answer or claim expired on November 16, 2009.

The ACPA provides that service of process in an *in rem* action may be accomplished by sending a notice of the alleged violation and intent to proceed under the ACPA to the registrant of the domain name at the postal and email address provided by the registrant to the registrar and by publishing notice of the action as the court may direct promptly after filing the action. 15 U.S.C. § 1125(d)(2)(B). Plaintiffs have complied with these provisions and the undersigned recommends a finding that service of process has been accomplished in this action.

### Grounds for Entry of Default

Under Fed. R. Civ. P. 12(a), and as stated in the notice of this lawsuit, anyone asserting a claim to the defendant domain name was required to file an answer or response with the Clerk by November 16, 2009. No responsive pleading was filed by either the current registrant or anyone else claiming ownership of the domain name and on November 20, 2009 plaintiffs filed their request for entry of default. (Docket no. 12). The Clerk of the Court entered a default on November 13, 2009. (Docket no. 13). Upon obtaining default, plaintiffs filed their motion for default judgment. (Docket no. 14). Although plaintiffs waived their right to oral argument on the motion for default judgment (Docket no. 15), the court entered an Order (Docket no. 16) on January 13, 2010, setting this matter down for a hearing on February 5, 2010. A copy of the Order was mailed to the current registrant at his listed address: IXIS, c/o George Alex Wilkes, Suite 15, 2 Old Brompton Road, London, SW7 3DQ, Great Britian. (Docket no. 16).

The undersigned magistrate judge recommends a finding that notice of this *in rem* action was provided properly, that no one filed a responsive pleading or claim to the defendant domain name in a timely manner, and that the Clerk properly entered a default as to the defendant domain name <aprov.com>.

### Liability and Relief Sought

According to Fed. R. Civ. P. 54(c), a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Because no responsive pleading was filed, the factual allegations in the complaint are deemed admitted. *See* Fed. R. Civ. P. 8(b)(6). The relief sought in the complaint is the transfer of control of the defendant domain name from the current registrant to the plaintiffs. The notice published pursuant to the ACPA provided that one of the remedies available under the ACPA was the transfer of the domain name to the plaintiffs in this action. (Docket no. 11, Ex. A).

To state a claim under the ACPA, plaintiffs must prove that <aprov.com> and/or the current registrant registered, trafficked in, or used a domain name with a bad faith intent to profit and that the domain name is either identical or confusingly similar to a distinctive mark owned by plaintiffs, or, upon a finding that a mark owned by plaintiffs is famous, that the domain is identical or confusingly similar to, or dilutive of, plaintiffs' famous mark. *See* 15 U.S.C. § 1125(d)(1)(A); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). Registration of a mark is prima facie evidence that the mark is at least descriptive and has acquired distinctiveness. *America Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001). Further, secondary meaning exists where there are extensive advertising expenditures, sales successes, attempts to plagiarize a mark, and where a mark has been used

11

exclusively for an extended period of time. *See, e.g., Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990).

Plaintiffs in this action have failed to register their mark. (Compl. ¶ 66). However, plaintiffs claim they have used the "APROV" mark in international commerce in connection with the promotion of their goods and services since 2002. (Compl. ¶ 41). Plaintiffs have used the "APROV" mark in advertising, marketing, and promoting their services and have used the mark in channels of trade, including through the <aprov.com> domain. (Compl. ¶¶ 71). At one time, plaintiffs achieved significant sales and revenue from the use of the "APROV" mark. (Compl. ¶ 71). In addition, "APROV" is an arbitrary or fanciful mark, thereby providing additional support for a finding of distinctiveness. *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527-28 (4th Cir. 1984). For these reasons the undersigned magistrate judge recommends a finding that the "APROV" mark is distinctive.[3]

The next consideration is whether <aprov.com> is identical or confusingly similar to, the "APROV" mark. Based on the uncontested allegations in the complaint, the undersigned magistrate judge recommends a finding that <aprov.com> is confusingly similar to the "APROV" mark. The registration and use of <aprov.com> is likely to cause confusion among the public, including plaintiffs' customers, because the "dominant or salient portions" of the "APROV" mark and <aprov.com> are identical. *See Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Accordingly, "a finding of likelihood of confusion is appropriate despite the fact that collateral portions of the mark may differ." *Atlas Copco AB v. Atlascopcoiran.com*, 533 F. Supp. 2d 610, 614 (E.D. Va. 2008) (finding that the

---

[3] Plaintiffs contend that the "APROV" mark is a famous mark under 15 U.S.C. § 1125(c)(2)(A) but they have failed to present sufficient evidence to establish that the mark is famous. Given the finding that the "APROV" mark is distinctive and that the defendant domain name is confusingly similar to the "APROV" mark, this lack of proof does not change the remedy recommended.

addition of generic geographic terms to plaintiff's registered mark did not distinguish the defendant domain names from the registered marks) ("An internet user might reasonably assume that the geographic term 'CASPIAN' and 'IRAN' were added to the ATLAS COPCO trademark by the Plaintiffs to identify its geographic location."). In this case, there is no difference between the "APROV" mark and the defendant domain name as the domain name consists entirely of the "APROV" mark.

Having recommended a finding that the "APROV" mark is distinctive and that <aprov.com> is confusingly similar to the "APROV" mark, the court now turns to the question of whether the current registrant registered or used <aprov.com> with a bad faith intent to profit. For at least the following reasons, the undersigned recommends a finding that the current registrant has used <aprov.com> with a bad faith intent to profit from the "APROV" mark:

1. Based on the uncontested allegations in the complaint, it appears that the current registrant hijacked the <aprov.com> domain without authorization.

2. The current registrant has no valid trademark or intellectual property rights in the "APROV" mark or <aprov.com> within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(I);

3. From the record before the court, it appears that <aprov.com> does not consist of the registrant's legal name or in any way identify the current registrant within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(II);

4. The current registrant has not used <aprov.com> in connection with the *bona fide* offering of any goods or services within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(III) since the use of the "APROV" mark was without permission from the mark's owner;

5. The current registrant has not used <aprov.com> for *bona fide* noncommercial purposes or within the fair use provisions of 15 U.S.C. § 1125(d)(1)(B)(i)(IV); and

6. The current registrant's intent in registering and using <aprov.com> was to divert plaintiffs' customers away from plaintiffs' business, profit from the distinctive nature of the "APROV" mark, and harm the goodwill of the "APROV" mark, within the meaning of 15 U.S.C. § 1125(d)(1)(B)(i)(V).

The ACPA provides that, upon a finding of a violation, the court has discretion to cancel the domain name registration or order it transferred to the trademark owner. 15 U.S.C. § 1125(d)(1); *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 232 (4th Cir. 2002) ("Transfer or cancellation of the defendant domain name[] is the only remedy available under § 1125(d)(2)'s *in rem* provision"). For these reasons, the undersigned magistrate judge recommends a finding that the current registrant's actions have violated the ACPA, and that an order be entered requiring the registrar Tucow's, Inc. to transfer the registration of <aprov.com> to plaintiffs.

## NOTICE TO PARTIES

**Failure to file written objections to these proposed findings of fact and recommendations within fourteen (14) days after being served with a copy of the proposed findings of fact and recommendations may result in the waiver of any right to a *de novo* review of the proposed findings and recommendations and such failure shall bar you from attacking on appeal any findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error. A copy of this proposed findings of fact and recommendations shall be sent to the current registrant of the domain name by email to galexwilkes@gmail.com and galexwilkes@googlemail.com, and by mail to IXIS, c/o George Alex Wilkes, Suite 15, 2 Old Brompton Road, London, SW73DQ, Great Britain.**

15

Entered this 1st day of March, 2010.

                                                /s/
                                   John F. Anderson
                                   United States Magistrate Judge

                                   John F. Anderson
                                   United States Magistrate Judge

Alexandria, Virginia